## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JANET MOAZED                                    3:02 CV000 91 (EBB)

V.

FIRST UNION MORTGAGE CORPORATION
n/k/a WACHOVIA MORTGAGE CORPORATION

V.

FARZAD MOAZED, PARVIZ SEPAHBODI            FEBRUARY 24, 2004
AND JANET MOAZED


### PLAINTIFF'S REPLY TO DEFENDANT'S RULE 11 MOTION

The defendant seeks Rule 11 Sanctions for the plaintiff's allegation that the defendant failed

to comply with 15 U.S.C. § 1635(b) and Reg. Z §§ 226.23(d)(2) (both "TILA requirements"). These

statutes and Regulations basically provide that after a lender has received a Notice of Right to Cancel

from a consumer in a rescindable transaction, that:

> "Within 20 calendar days after a receipt of a notice of rescission, the
> creditor shall return any money or property that has been given to
> anyone in connection with the transaction and shall take any action
> necessary to reflect the termination of the security interest."

The use of the word "shall" appears mandatory, not merely directive. These provisions may

only be modified by court order, 15 U.S.C. § 1635(b), Reg. Z §§ 226.23(d)(4).

It is the plaintiff's position that the defendant did not do this, and whatever acts or activities

the defendant claimed to have taken, do not comply with the above requirements. For instance, a

Motion for Extension of Time to Respond to Truth-in-Lending notices, Exhibit D is not compliance.

The TILA requirements do not allow for this extension of time "to respond". The defendant did not

by this Motion obtain a modification of the TILA requirements. There is no mention in any pleading filed by the defendant that it is seeking a modification of the TILA requirements and it is requesting the court to modify these requirements.

Attention is also specifically made to the first part of the TILA requirements that must be done within 20 calendar days. This requires the defendant "to return any money or property that has been given to anyone in connection with the transaction . . . ."

What the defendant did do was to attempt a self help remedy in a self-styled Motion to Deposit Funds into Court Pursuant to Federal Truth-in-Lending Act, Exhibit N on or about December 18, 2001 by giving the clerk a check of $26,931.24. The Clerk refused to accept this tender. There is no Federal Truth-in-Lending Act provisions authorizing this practice, and therefore the deposit is not "pursuant" to anything except the defendants' own interpretations of the Truth-in-Lending Act requirements. The defendant makes such acts at its own risk.

This is clearly a violation of the TILA requirements that must be done in 20 days. And this is part of the plaintiff's allegations of the violation by the defendant of the TILA requirements.

What the defendant should have done to comply with the TILA requirements was "to return any money . . . that has been given to anyone . . ." to the debtor who had liability in this transaction. The plaintiff has no claim on this money because she has no obligation on the note. The plaintiff points out once more that there is no request by the defendant to modify the TILA requirements. The proper procedure would have been for the defendant to file a declaratory judgment action. Now the defendant seeks Rule 11 actions because the plaintiff alleges the defendant failed to comply with the TILA requirements. It is solely the defendant who must initially comply with the TILA requirements

-2-

plaintiff's complaint on this issue by complying with a simply worded statute and regulation.

The defendant was reluctant to ask the court to modify the TILA requirements because it claims the plaintiff's rescission was ineffective. Or perhaps the defendant was unaware or unknowledgeable that it could seek modification or seek guidance from the court. Instead, the defendant, at its sole risk, by failing to comply with the TILA requirements, sought its own remedies by making an improper tender to the court "with full reservation of rights", Exhibit _____, page 2.

Such "reservation of rights" is not consistent with the TILA requirements or seeking the court's equitable powers to modify these requirements. If the defendant believes the plaintiff has

**Step Two** Second, the creditor has twenty days from receipt of the consumer's cancellation notice to return any money or property given to anyone, and to take any action necessary to reflect the termination of the security interest. 15 U.S.C. § 1635(b); Reg. Z §§ 226.23(d)(2).

**Step Three** Third, *after the creditor has complied with the preceding mandate,* the consumer is to tender back to the creditor any money or property received. 15 U.S.C. § 1635(b); Reg. Z §§ 226.23(d)(3). Both the statute and the regulation cast the creditor's step-2 duties as conditions precedent to this step: if it does not comply, the consumer's obligation to tender does not arise. Neither the Act nor Regulation Z sets a deadline for the consumer's tender. Courts have authority to modify the procedures in this step. Finally, the courts are given the authority to modify the process. 15 U.S.C. § 1635(b); Reg. Z §§ 226.23(d)(4).

The second step in the rescission process takes the ball into the creditor's court, creating a two part obligation. Within twenty calendar days of receiving the rescission notice, the creditor must return to the consumer any amount of money or property that has been given to anyone in connection with the transaction, because the consumer has no legal liability for any such charges upon rescission. The creditor also must take affirmation steps to reflect the fact that the security interest was automatically terminated by the rescission. The defendant did not do this.

This second step of the rescission process is one which the courts have equitable authority to modify. Reg. Z §§ 226.23(d)(4). *Ralls v. Bank of New York (In re Ralls),* 230 B.R. 508 (Bankr. E.D. Pa. 1999). No recognizable Motion to Modify has ever been made, especially by reference to the statute.

The creditor's other task is to take any necessary or appropriate action to reflect the fact that the security interest was automatically terminated by the rescission. 15 U.S.C. § 1635(b); Reg. Z,

-4-

226.23(d)(2); Official Staff Commentary §§ 226.23(d)(1)-1. This requires canceling documents creating the security interest and filing release or termination statements in the public record. Official Staff Commentary §§ 226.23(d)(2)-3. *Cf. Comerica Bank-Detroit v. Dawson-Price*, 1990 WL 159988 (N.D. Ill. Oct. 17, 1990). However, the Commentary gives some leeway, by providing that the process of documenting the termination of the security interest must begin within the twenty days; it need not be completed within that time, though the creditor is responsible for seeing it through.    Official Staff Commentary §§ 226.15(d)(2)-(3), 226.23(d)(2)-3.    *See Personius v. Homeamerican Credit, Inc.*, 234 F. Supp. 2d 817 (N.D. Ill. 2002) (rejecting plaintiffs' argument that creditors' compliance was defective because it was not completed within 20 days). The defendant has not shown it was ever in the process of terminating the security interest. It has only shown it intended to refuse to do this relying on its assertion the plaintiff had no right to rescind.

If the creditor disputes the consumer's right to rescind, it should file a declaratory judgment action within twenty days after receiving the rescission notice, before its deadline to return the consumer's money or property and record the termination of its security interest.   15 U.S.C. § 1635(b).

Where a creditor in good faith disputes the threshold question of whether there is a violation which triggers the continuing right, it should seek guidance from a court, *Decision One Mortg. Co. v. Fraley*, 2000 U.S. App. LEXIS 33881 (6th Cir. Dec. 19, 2000). Commonly, the creditor expresses its disagreement by simply ignoring the cancellation notice entirely, or by making obstructive practices. Despite the potential consequences to lenders for taking that route, *Aquino v. Public Fin. Consumer Discount Co.*, 606 F. Supp. 504 (E.D. Pa. 1985) (the creditor can petition court for declaration of its rights and duties within its 20 day window to respond), the consumer is usually

-5-

forced to take the initiative, and resort to judicial action to enforce the rescission rights she has previously exercised by sending the cancellation notice. Since the law is designed to be self-enforcing (i.e., the cancellation occurs by operation of law upon the consumer's cancellation, and if the creditor does not respond, the law's presumptive result is that the consumer does not have to tender, the consumer would have legal justification for assuming the law operates as prescribed, and act accordingly. This is the action taken in this case.

Since extended rescission takes place after the proceeds of the transaction have been disbursed, if the creditor is concerned about the consumer's tender obligation, the creditor should and must request the court's equitable authority within this twenty day window. Clearly, the court can, where the equities warrant, adjust the relative duties described in steps 2 (the creditor's duty to return the consumer's money or property and to reflect the termination of the consumer's security interest) and 3 (the consumer's duty of tender). The defendant has not done this.

The courts have no authority to modify the substantive outcomes of a cancellation -- those results described in step 1, particularly the automatic voiding of the security interest but also the cancellation of the consumer's liability for finance or other charges. This reading is bourne out by the legislative history, which described section 1635(b) as providing that "the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations *after* the creditor has performed his obligations as required under the act. S. Rep. No. 368, 96th Cong., 2d Sess. at 29 (emphasis added), *reprinted* in 1980 U.S.C.C.A.N. 236, 265.

Both the statute and Regulation Z make it clear that, if the consumer has the extended right and chooses to exercise it, the security interest and obligation to pay charges are automatically voided -- period, *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704-05 (9th Cir.

-6-

1986).  Courts do not have equitable discretion to alter substantive provisions of step 1 which automatically eliminates the consumer's obligation to pay finance or other charges because the obligation is void.

It is clear from the statutory language that the court's modification authority extends only to the "procedures" specified by section 1635(b).  The voiding of the security interest is not a "procedure," in the sense of a step to be followed or an action to be taken.  Instead, it is expressed in section 1635(b) as a consequence of an action that has already been taken, i.e., the obligor's exercise of the right to rescind.  Thus, the statute is best read as giving the court the authority to modify the creditor's and obligor's tender duties and the creditor's duty to take any action necessary to reflect the termination of the security interest, but not the voiding of the security interest or the cancellation of the consumer's liability for finance or other charges.

If there were any doubt about this interpretation of section 1635(b), it is dispelled by Regulation Z.  The regulation lists the effects of rescission in three subsections: first, the automatic voiding of the security interest and cancellation of the consumer's liability for finance charges and other charges; second, the creditor's duty to return the consumer's money or property and take any action necessary to reflect the termination of the security interest; and third, the consumer's tender obligation.  The regulation then states that the procedures outlined in the second and third subsections may be modified by court order.  Given the great deference that is due to the Federal Rreserve Board's interpretation of TILA, and the fact that this interpretation is not only consistent with but arguably mandated by the statutory language, Regulation Z's insistence that the voiding of the security interest is automatic and not subject to modification should be dispositive.

-7-

It is the plaintiff's position in her complaint that the defendant has failed to comply with the second step of the rescission process, and that it has failed to request the court's equitable modification powers until long after the twenty-day window expired if it has done this at all. This is the Truth-in-Lending violation alleged, and which the defendant's pleadings admits when viewed in their totality.

The plaintiff's strategy in this action is for the court if it is requested to exercise its equitable powers to determine whether it should exercise its equitable powers, and to examine the conduct of the defendant after it received the plaintiff's notice of rescission. This conduct is not only what the defendant didn't do, but what it did do to hinder and frustrate the plaintiff's right to require equitable conduct by the defendant as a pre-requisite to the defendant's having any equitable rights. It has no equitable powers until this court determines that it does. The defendant's trial tactics, both in this action and the prior state action, in its pleadings and discovery compliance will show that the court is not warranted in exercising equitable jurisdiction.

As is true of Truth-in-Lending as a whole, the rescission provisions should be liberally construed in favor of borrowers, Truth-in-Lending rescission was intended to be a "painless remedy" for the consumer, "placing all burdens on the creditor," a purposeful departure from common law rescission. *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1140 (11th Cir. 1992); *Aquino v. Public Fin. Consumer Discount Co.*, 606 F. Supp. 504 (E.D. Pa. 1985) (statute clearly places burden of first performance on creditor, the party who has violated the law [extended right context]); *French v. Wilson*, 446 F. Supp. 216 (D.R.I. 1976).

Some courts seem to feel that the prospect of the consumer's tender obligation becoming an unsecured debt is itself frightful enough to warrant modification. Other courts recognize that this

-8-

result was built into the system, and require more than that simple fact to establish an equitable case for modification. *In re* <u>Lang</u>, Clearinghouse No. 45,907 (D. Or. Aug. 1, 1990) (creditor must perform its obligations before it can assert right to payment of tender obligation; since it did not do so, and further did not present any evidence to support its request for equitable modification to condition rescission upon repayment, court would not order conditioned rescission. Indeed, Congress explicitly provided for a fate worse than an unsecured debt: if the creditor fails to receive tendered property or proceeds within twenty days, there is no longer any tender obligation at all. 15 U.S.C. § 1635(b). Routine modification in the extended right context is particularly inappropriate less rescission lose its value as an enforcement tool as creditors assume there are no meaningful consequence for violating the TILA requirements.

Since "the creditor must ordinarily tender first, *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1140 (11th Cir. 1992) it should be the creditor who must make the modification request, and as the moving party, should have the burden of persuasion. *In re* <u>Lang</u>, Clearing- house No. 45,907 (D. Or. Aug. 1, 1990) which held that the creditor must present evidence to support its request for equitable modification to condition rescission upon repayment; creditor must perform its obligations before it can assert right to payment of tender; and since it did neither, court would not condition rescission on tender).

The larger context of the creditor's conduct should not be overlooked in determining whether the equities demand changing the prescribed procedure. While rescission has a goal of restoring parties to the *status quo ante,* it must also retain its vitality as an enforcement tool. Achieving the *status quo ante* must take a secondary role to the enforcement role. By definition, the creditor has "unclean hands" (a "traditional equitable factor) since the dispute arises only by virtue of a Truth-in-

-9-

Lending violation. Moreover, since the triggering violations are, by statutory definition, material ones, that the consumer still has the right to cancel at all means that the creditor's violations should be considered severe. Therefore the creditor should start out with one equitable strike against it. *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704-05 (9th Cir. 1986).

If, by the time the court is considering the matter, the creditor has already violated the Act a second time, by ignoring or refusing to honor a rescission notice and the TILA requirements, that should be a second equitable strike against it. A violation which, under the statute, can subject the creditor to a new statutory damage award and even result in loss of the right to tender entirely, should certainly be considered severe enough to be weighed in the balance. That the creditor may have, in good faith, disputed the consumer's rescission right does not diminish this, as its proper course was to seek judicial guidance. *Aquino v. Public Fin. Consumer Discount Co.*, 606 F. Supp. 504 (E.D. Pa. 1985); *In re* Lynch, 170 B.R. 26 (Bankr. D.N.H. 1994). If its concern was the consumer's ability to tender, the creditor should have sought guidance from a court; the statute does not authorize the creditor to modify the process unilaterally and extrajudicially.

In the prior state foreclosure action, Mortgage Electronic Registration Systems, Inc. as nominee for First Union Mortgage Corporation ("state plaintiff") v. Farzad Moazed, Janet Moazed ("state defendant") CV 01-0185505 ("state action"), return date September 18, 2001, the state plaintiff claims it is not in violation of the second step process wherein it must either release the security interest or initiate a request to exercise its equitable powers. The plaintiff in the state action did neither, and this is the Truth-in-Lending violation alleged.

-10-

The owner of the premises secured by the mortgage sought to be foreclosed in the state action exercised her right of rescission on September 24, 2001, thereby initiating the twenty-day period, which would expire on October 15, 2001 at the latest.

On September 24, 2001 the state defendant filed a Request for Production, Exhibit A. The state plaintiff objected to this Request, Exhibit B. The reasons stated therein are improper and were designed only to thwart and delay the borrower's rescission remedies and were false and misleading.

On September 25, 2001, the state defendant filed a disclosure of defense, Exhibit C.

On October 3, 2001, the state plaintiff filed a Motion for Extension of Time to November 14, 2001 to respond to the Truth-in-Lending notices, recognizing it had to respond within the twenty-day period, but seeking an additional twenty days, Exhibit D. This procedure is not recognized by the Truth-in-Lending laws, and did not seek the court's equitable powers.

On October 5, 2001 the state defendant filed an Objection to Plaintiff's Motion for Extension of Time, Exhibit E.

On October 25, 2001, the state defendant noticed the deposition of Jody L. Rapoport, the closing attorney for the mortgage transaction, Exhibit F.

In response to the state defendants' Motion for Extension of Time, the state plaintiff filed an objection on October 9, 2001 and stated therein "a purported violation of any Truth-in-Lending laws is not a defense to a mortgage foreclosure", Exhibit G. This statement is patently false and a misleading statement to the court.

On October 10, 2001, the state plaintiff filed a Motion for Protective Order, Exhibit H and I, thus attempting to prevent the obtaining of information of the person most likely to know the facts. In such Motion the state plaintiff misrepresented that Janet Moazed was not a borrower, that the

-11-

documents requested were protected by an attorney client privilege, and that the records sought were bank records not subject to production without compliance with C.G.S. 36a-43 which is only applicable to bank records, and the state plaintiff is not a bank.

On October 12, 2001, the state defendant filed a Motion to Strike the complaint, Exhibit J. This motion was argued on November 19, 2001 and was never ruled upon by the court.

On October 14, 2001, the state plaintiff filed a Motion to Disgorge, Exhibit K. This Motion does not seek equitable modification of the rescission obligations of the state plaintiff, and no mention of the court's equitable powers to modify is sought. In fact, the state plaintiff asserts the state defendant is not within the class of persons protested by 15 U.S.C. 1635 even though she was the owner of the mortgaged premises. This is another example of a false and misleading statement made to the court.

On November 9, 2001, the state plaintiff filed another Motion for Extension of Time to respond to the rescission claim, Exhibit L. This motion does not serve as compliance with the lender's duties which must be performed within twenty days, nor does it seek an exercise of the court's equitable powers to modify the Truth-in-Lending requirements.

On December 18, 2001, the state plaintiff filed a response to the state defendant's rescission claim, and sought ex parte to fashion its own view of the rescission process. It did not seek the court's equitable modification powers, Exhibit M. The response makes a series of false and misleading statements.

The state plaintiff further filed on December 18, 2001, a Motion to Deposit Funds into Court Pursuant to Federal Truth-in-Lending Act, Exhibit N. Such motion is unknown under the Truth-in-

-12-

Lending Act. Any such tender as required by the Truth-in-Lending requirements must be made to the consumer or the person with monetary liability.

The response and objection that Jody L. Rapaport is an attorney for the state plaintiff and seeks a legal conclusion of agency is materially in direct contradiction of the state plaintiff's statement in its Motion for Protective Order, Exhibits H and I, wherein it states that the documents sought from her "may be privileged under either the attorney client privilege or the work/product doctrine.

The plaintiff has properly plead the facts that the defendant did not comply with the Truth-in-Lending Act requirements. The defendant has not returned any moneys which it must return, it has not completed the release of the security instrument, and in fact has never started the release process. In no motion or document filed in the state court proceeding, or this proceeding, has the defendant ever actually requested by reference to the Truth-in-Lending Act, 15 U.S.. § 1635(b), or Reg. Z §§ 226.23(d)(4), that a court modify the Truth-in-Lending Act requirements. Motions for Extension of Time and/or Motions to Disgorge and/or Motions to Deposit are not satisfactory substitutes to either comply with the Truth-in-Lending Act requirements or to obtain the Court's equitable authority to modify the Truth-in-Lending Act requirements.

While the Court may disagree with the plaintiff's argument on this issue, it does not mean that counsel has violated Federal Rule of Civil Procedure 11(b). Plaintiff has alleged a fact which is true by her understanding of the Truth-in-Lending Act.

-13-

Therefore, the Defendant's Motion for Rule 11 actions should be denied.

THE PLAINTIFF JANET MOAZED

By: _____
      M. Dean Montgomery
      Federal Bar No. CT 07312

Bentley, Mosher, Babson & Lambert, P.C.
321 Railroad Avenue
P.O. Box 788
Greenwich, Connecticut 06836-0788
(203) 629-2424 (Telephone)
(203) 629-2545 (Facsimile)
D.Montgomery@AttysBentley.com

Counsel to the Plaintiff,
Janet Moazed

-14-

## CERTIFICATION

I hereby certify that a copy of the Plaintiff's Reply to Defendant's Rule 11 Motion was mailed via United States mail, postage prepaid, on this 24th day of February, 2004, to the following counsel and pro se parties of record.

Geoffrey K. Milne, Esq.
Hunt, Leibert, Chester & Jacobsen, P.C.
50 Weston Street
Hartford, Connecticut  06120

Farzad Moazed
Pro Se
210 River Run
The Mill Riversville
Greenwich, Connecticut  06831

M. Dean Montgomery, Esq.
Federal Bar No. CT 07312

-15-