UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANET MOAZED                                          3:02 CV 91 (EBB)

V.

FIRST UNION MORTGAGE CORPORATION                     October 4, 2005

OBJECTION TO MOTION TO REOPEN AND ENTER NEW JUDGMENT OF
FORECLOSURE

I strongly oppose Mr. Milne's motion to reopen and enter a new judgment of foreclosure
for the following reasons:

Before I begin with my reasons for my objection, I would like to start with providing a
summary record of our offer to pay off the entire outstanding mortgage amount to First
Union Mortgage Corporation.

Upon examination, Franklin First Financial Ltd.'s refinancing offer seemed most
attractive and we decided to proceed with it. Therefore, in early March, Franklin First's
mortgage broker, Melissa Reynolds, arranged for an appraisal from Flax & Co., located
in Riverside, CT (copy attached). Our property was appraised at $1.2 million as of
03/07/2005.

Subsequent to this appraisal & after submitting an application for refinancing, we
received a Good Faith Estimate from Franklin First Mortgage Co. for a mortgage loan of
$833,000 on May 15, 2005(copy attached). This led me to call Mr. Milne and I asked for
a pay-off letter. Mr. Milne faxed his first pay-off letter (copy attached) dated 06/14/2005.

Ever since Mr. Milne's first pay-off letter of June 14th until the Status Conference of
08/25/2005, for over 3 months, I tried in every way that I knew of to have Mr. Milne
provide me with more details & break-downs on the large amounts, including interest,
escrow, legal fees and a few other minor items. To this date, I never received a
satisfactory response.

That is when I reached out for the Court's intervention which led to the Status
Conference of August 25, 2005. By this time, I had spent some 10's of hours or more,
working on this project in order to come up with the correct pay-off amount.

As Your Honor may recall, during our Status Conference on August 25th, I arrived
prepared with a 3-page memorandum on the pay-off amount entitled:
"DISCREPANCIES"(copy attached). The opposing counsel, Patrick Crook, was 25
minutes late for the 1-hour meeting, was unprepared, and seemed confused during parts
of this Status Conference. As Your Honor may again recall, during that Status

Conference, Your Honor turned to me and asked me for the pay-off amount. I replied by stating that my total was $819,000-$820,000, demonstrated in my "DISCREPANCIES." Your Honor then turned to Mr. Crook and eventually ordered him to provide a response by September 2, 2005 to the Court.

September 2nd came and went. When I had not received a copy of Mr. Crook's response by September 8th, I sent a fax to him (copy attached), inquiring about his response to the Court. I never received a reply to my fax from Mr. Crook. Finally, on September 21st (19 days late), I received a fax from Mr. Milne to which I replied on September 22nd (copy attached). In my reply, once again I spelled out the math and demonstrated my method of calculation which provided a total of $824,774.76 (valid through Sept. 30th).

The central issue in this case is not that I am not willing or do not have the personal means to pay-off the First Union's mortgage outstanding. I can do so, because I have 2 lenders ready and willing to make the loan. Also, in the event of a shortfall, I am in a position to make up the difference. Since the refinancing phase of this case, the real issue is and has been, the existing discrepancy between our pay-off amounts, and the opposing counsel's lack of cooperation in providing the detailed break-down numbers.

Again, according to my best calculations, through today's date, October 4, 2005, the outstanding pay-off amount adds up to $825,755.99. For each additional day, one must allow $131.63 for interest and $28.78 for escrow amounts. And when during the Status Conference, Your Honor ordered the opposing counsel to provide his response to the Court by September 2nd, not only that he was remiss in following the Court's order, but also, the pay-off letter eventually provided was full of overstatements, once again.

In closing, I am willing and capable of paying off the $825,755.99 plus the daily accruals or abide by the Court's decision. To conclude, I strenuously object to Mr. Milne's motion for foreclosure for reasons that I have demonstrated in the foregoing.

Sincerely,

Farzad Moazed

Zod Moazed

## CERTIFICATION

I hereby certify that a copy of the above was mailed or hand-delivered, postage prepaid, on October 5, 2005 to the followings:

Dean Montgomery, Esq.
Bentley, Mosher, Babson & lambert, PC
321 Railroad Avenue
Greenwich, Ct. 06836

Jeff Milne, Esq.
Hunt Leibert Jacobson, PC
Attorneys at Law
50 Weston Street
Hartford, Ct. 06120

John P. Regan
1200 Summer Street
Stamford, Ct. 06905

Zod Moazed   Pro Se



File No. s-5700

********* INVOICE *********

File Number: s-5700                          03/07/2005

Franklin First Financial
329 Hempstead TPKE
West Hempstead, NY 11552

Borrower :          Farzad Moazed

Invoice # :         s-5700
Order Date :        02/23/2005
Reference/Case # :
PO Number :

Appraisal Report

367 West Hill Road
Stamford, CT  06902

| | | |
|---|---|---|
| 1004 Single Family | $ | 475.00 |
| | $ | ............ |
| Invoice Total | $ | 475.00 |
| State Sales Tax @ | $ | 0.00 |
| Deposit | ($ | 475.00 ) |
| Deposit | ($ | ) |
| | | ............ |
| Amount Due | $ | 0.00 |

Terms:  Net 30 days

Please Make Check Payable To:

1111 East Putnam Avenue Suite 300
Riverside, CT 06878

Fed. I.D. #: 20-0676771

Thank you.



File No. s-5700

## APPRAISAL OF



Single Family Residence

## LOCATED AT:

367 West Hill Road
Stamford, CT  06902

## FOR:

Franklin First Financial
329 Hempstead TPKE
West Hempstead, NY 11552

## BORROWER:

Farzad Moazed

## AS OF:

March 2, 2005

## BY:

Stephen Flaxman



File No. s-5700

03/07/2005

Franklin First Financial
329 Hempstead TPKE
West Hempstead, NY 11552

File Number:  s-5700

In accordance with your request, I have personally inspected and appraised the real property at:

367 West Hill Road
Stamford, CT  06902

The purpose of this appraisal is to estimate the market value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the estimated market value of the property as of   March 2, 2005            is:

$1,200,000
One Million Two Hundred Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions, final estimate of value, descriptive photographs, limiting conditions and appropriate certifications.

Respectfully Submitted,

Stephen Flaxman

Principal

Flax Appraisals

COMPLETE APPRAISAL / SUMMARY REPORT

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. s-5700

**Property Description**

| Property Address | 367 West Hill Road | City | Stamford | State | CT | Zip Code | 06902 |

Legal Description Vol:1023 Page:259    County Fairfield

Assessor's Parcel No. 001-8488    Tax Year Crrnt    R.E. Taxes $ 10,343.00    Special Assessments $ None

Borrower Farzad Moazed    Current Owner Moazed    Occupant: [X] Owner [ ] Tenant [ ] Vacant

Property rights appraised [X] Fee Simple [ ] Leasehold    Project Type [ ] PUD [ ] Condominium (HUD/VA only)    HOA$ N/A /Mo.

Neighborhood or Project Name N/A    Map Reference 9,E-24    Census Tract 0205.00

Sale Price $ Refinance    Date of Sale N/A    Description & amount of loan charges/concessions to be paid by seller None Known

Lender/Client Franklin First Financial    Address 329 Hempstead TPKE, West Hempstead, NY 11552

Appraiser Stephen Flaxman    Address Flax Appraisal 1111 East Putnam Ave Suite 300 Riverside, CT 06878

**NEIGHBORHOOD**

| Location | [ ] Urban [X] Suburban [ ] Rural | Predominant occupancy | Single family housing | Present land use % | Land use change |
|---|---|---|---|---|---|

Location [ ] Urban [X] Suburban [ ] Rural
Built up [X] Over 75% [ ] 25-75% [ ] Under 25%
Growth rate [ ] Rapid [X] Stable [ ] Slow
Property values [ ] Increasing [X] Stable [ ] Declining
Demand/supply [ ] Shortage [X] In balance [ ] Oversupply
Marketing time [ ] Under 3 mos. [X] 3-6 mos. [ ] Over 6 mos.

Predominant occupancy [X] Owner [ ] Tenant [ ] Vacant (over 5%)

Single family housing PRICE $(000) / AGE (yrs)
750 Low / New
3500+ High / 100+
Predominant 1100 / 45

Present land use %
One family 80%
2-4 family 10%
Multi-family
Commercial 5%
(Other 5%)

Land use change [X] Not likely [ ] Likely
[ ] In process
To:

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: Established residential neighborhood.  Subject neighborhood is bounded by the Merritt Parkway to the North, High Ridge Road to the East, I-95 to the South, Greenwich to the West.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): The appeal of the subject marketing area is deemed good and is within close proximity to schools, shopping areas and other town amenities. Employment stability is deemed good and large employment centers are within commuting distance. Small businesses primarily make up the commercial land use and is not deemed adverse to marketability.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time - - such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): Market conditions in the subject neighborhood appear stable with supply and demand in equilibrium.  Marketing times tend to be 3 to 6 months.  Sales and financing concessions are not considered common in the current marketplace.

**PUD**

Project Information for PUDs (if applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? [ ] YES [ ] NO

Approximate total number of units in the subject project N/A    Approximate total number of units for sale in the subject project N/A

Describe common elements and recreational facilities: N/A

**SITE**

| Dimensions Subject to Survey | | Topography | Basically Level |
|---|---|---|---|

Dimensions Subject to Survey
Site area 1.20 Acres    Corner Lot [ ] Yes [X] No
Specific zoning classification and description R-20 1 Family Residential / 20,000 sq. ft. min.
Zoning compliance [X] Legal [ ] Legal nonconforming (Grandfathered use) [ ] Illegal [ ] No zoning
Highest & best use as improved: [X] Present use [ ] Other use (explain)

Topography Basically Level
Size Typical for area
Shape Slightly Irregular
Drainage Appears adequate
View Average
Landscaping Good
Driveway Surface Asphalt
Apparent easements See Site Comments
FEMA Special Flood Hazard Area [ ] Yes [X] No
FEMA Zone X    Map Date 11/17/1993
FEMA Map No. 090015 0005C

Utilities Public Other
Electricity [X]
Gas [X]
Water [X]
Sanitary sewer [ ] Septic
Storm sewer [X]

Off-site Improvements Type    Public Private
Street Asphalt    [X]
Curb/gutter None
Sidewalk None
Street lights Utility Pole    [X]
Alley None

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): See Attached Addendum

**DESCRIPTION OF IMPROVEMENTS**

GENERAL DESCRIPTION
No. of Units 1
No. of Stories 1.5
Type (Det./Att.) Detached
Design (Style) Cape
Existing/Proposed Existing
Age (Yrs.) 57
Effective Age (Yrs.) 5-10

EXTERIOR DESCRIPTION
Foundation Concrete
Exterior Walls Wood Sh
Roof Surface Asph. Sh.
Gutters & Dwnspts. Aluminum
Window Type Double Hung
Storm/Screens Yes / Yes
Manufactured House No

FOUNDATION
Slab None
Crawl Space None
Basement Full
Sump Pump None Noted
Dampness None Noted
Settlement None Noted
Infestation None Noted

BASEMENT
Area Sq. Ft. 2,255
% Finished 40%
Ceiling Drop Panel
Walls Wood Panel
Floor Ceramic
Outside Entry Yes
Bulkhead

INSULATION
Roof [ ]
Ceiling [ ]
Walls [ ]
Floor [ ]
None [ ]
Unknown [X]
Concealed

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | X | | | X | | 2,255 |
| Level 1 | X | 1 | 1 | 1 | 1 | 1 | | 3 | 2F | | | 2,255 |
| Level 2 | | | | | | | | 2 | 2F | | | 1,006 |

Finished area above grade contains:    10 Rooms;    5 Bedroom(s);    4F Bath(s);    3,261 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Hardwood | Type | HA | Refrigerator | [X] | None | [ ] | Fireplace(s) #1 | [X] | None | [ ] |
| Walls | Drywall | Fuel | Oil | Range/Oven | [X] | Stairs | [ ] | Patio | [X] | Garage 2 | # of cars |
| Trim/Finish | Wood/Paint | Condition | Good | Disposal | [X] | Drop Stair | [ ] | Deck | [ ] | Attached | 2-Car |
| Bath Floor | Ceramic | COOLING | | Dishwasher | [X] | Scuttle | [ ] | Porch | [ ] | Detached | |
| Bath Wainscot | Ceramic | Central | Yes | Fan/Hood | [X] | Floor | [ ] | Fence | [ ] | Built-In | |
| Doors | Wood | Other | None | Microwave | [ ] | Heated | [ ] | Pool Inground | [X] | Carport | |
| Good overall condition | | Condition | Good | Washer/Dryer | [X] | Finished | [ ] | | | Driveway | Yes |

Additional features (special energy efficient items, etc.): See Attached Addendum.

**COMMENTS**

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction remodeling/additions, etc.: Normal depreciation is noted in relation to age and condition of improvements. Improvements are deemed to be in good overall marketable condition. Design/appeal is deemed average. Quality of construction is deemed average. No items of functional or external obsolescence were observed. No apparent major repairs are noted.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: No apparent adverse environmental conditions were noted. The subject dwelling may posses lead-based paint because it was built before 1978.Oil tank is located in the basement - no evidence of leakage noted. See Attached..

Freddie Mac Form 70  6-93    PAGE 1 OF 2    Fannie Mae Form 1004  6-93

Produced using ACI software, 800.234.8727 www.aciweb.com

COMPLETE APPRAISAL / SUMMARY REPORT

# UNIFORM RESIDENTIAL APPRAISAL REPORT
File No. s-5700

## COST APPROACH

| Valuation Section | | |
|---|---|---|
| ESTIMATED SITE VALUE . . . . . . . . . . . . . . . . . . . . . . = $ | 450,000 | Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property): |
| ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS: | | Reproduction cost estimates are based on local builder costs and by The Marshall & Swift Cost Handbook. The estimated site value is derived from local land sales and from town assessment ratios. Remaining economic life is estimated to be 65-70 years. Site values in the subject marketing area commonly exceed 30% of the total value of the subject property. |
| Dwelling    3,261   Sq. Ft. @ $ 150.00   = $ | 489,150 | |
| Bsmt. 2255    Sq. Ft. @ $ 65.00   = | 146,575 | |
| F/P, Patio, Pool    = | 100,000 | |
| Garage/Carport   480   Sq. Ft. @ $ 40.00   = | 19,200 | |
| Total Estimated Cost New . . . . . . . . . . . . = $ | 754,925 | |
| Loss   Physical   Functional   External   Est. Remaining Econ. Life: | | |
| Depreciation  10% | 75,493 | |
| Depreciated Value of Improvements . . . . . . . . . . . = $ | 679,432 | |
| "As-is" Value of Site Improvements . . . . . . . . . . . . . . . = $ | 75,000 | |
| INDICATED VALUE BY COST APPROACH . . . . . . . = $ | 1,204,400 | |

## SALES COMPARISON ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 367 West Hill Road Stamford | 106 E Middle Patent Road Stamford 06903 | | 149 Emery Drive East Stamford | | 75 Halliwell Drive Stamford | |
| Proximity to Subject | | 3.61 miles | | 0.92 miles | | 1.01 miles | |
| Sales Price | $   Refinance | $   1,250,000 | | $   1,295,000 | | $   900,000 | |
| Price/Gross Liv. Area | $   0.00  ∅ | $ 416.25  ∅ | | $ 353.63  ∅ | | $ 273.97  ∅ | |
| Data and/or Verification Sources | Inspection Public Record | MLS,Public Record | | MLS,Public Record | | MLS,Public Record | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Sales or Financing Concessions | | None Known | | None Known | | None Known | |
| Date of Sale/Time | N/A | 08/04 Clsd | No Adj | 11/04 Clsd | No Adj | 06/04 Clsd | No Adj |
| Location | Average | Similar | | Similar | | Similar | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 1.20 Acres | 2.01 Acres | -40,500 | 1.17 Acres | No Adj | 0.22 Acres | 49,000 |
| View | Average | Similar | | Similar | | Similar | |
| Design and Appeal | Cape/Average | Ranch/Average | No Adj | Ranch/Average | No Adj | Cape/Average | |
| Quality of Construction | Average | Similar | | Similar | | Similar | |
| Age | 57A/5-10E | 53A/5-10E | | 47A/5-10E | | 64A/5-10E | |
| Condition | Good | Similar | | Similar | | Similar | |
| Above Grade Room Count  45 | Total 10 : Bdrms 5 : Baths 4F | Total 7 : Bdrms 4 : Baths 4F1H | -10,000 | Total 10 : Bdrms 5 : Baths 3F | 20,000 | Total 9 : Bdrms 4 : Baths 2F1H | 30,000 |
| Gross Living Area | 3,261 Sq.Ft. | 3,003 Sq.Ft. | 11,500 | 3,662 Sq.Ft. | -18,000 | 3,285 Sq.Ft. | No Adj |
| Basement & Finished | Full | Full | | Crawl | 20,000 | Full | |
| Rooms Below Grade | Part Finished | Finished | -10,000 | N/A | 10,000 | Unfinished | 10,000 |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | Central / CAC | Central / CAC | | Central / CAC | | Central / None | 10,000 |
| Energy Efficient Items | Per Code | Per Code | | Per Code | | Per Code | |
| Garage/Carport | 2 Garage | 2 Garage | | 2 Garage | | 2 Garage | |
| Porch, Patio, Deck, Fireplace(s), etc. | Patio 2 Fireplaces | Similar 1 Fireplace | | Similar 2 Fireplaces | -5,000 | Similar 1 Fireplace | |
| Fence, Pool, etc. | Ing. Pool | None | 25,000 | None | 25,000 | None | 25,000 |
| Other | None | None | | None | | None | |
| Net Adj. (total) | | [ ] + [X] - $ | 24,000 | [X] + [ ] - $ | 52,000 | [X] + [ ] - $ | 124,000 |
| Adjusted Sales Price of Comparable | | $ | 1,226,000 | $ | 1,347,000 | $ | 1,024,000 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.):  See Attached Addendum

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | None Last 36 Months Public Record | None Last 36 Months Public Record | None Last 36 Months Public Record | None Last 36 Months Public Record |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:
No listings or transfers of the subject property or any of the comparables used in this report were found within the last 3 years, except if noted above.

## RECONCILIATION

| | |
|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 1,200,000 |
| INDICATED VALUE BY INCOME APPROACH (If Applicable)  Estimated Market Rent $  N/A  /Mo. x Gross Rent Multiplier  N/A  = $ | N/A |

This appraisal is made [X] "as is"  [ ] subject to the repairs, alterations, inspections or conditions listed below  [ ] subject to completion per plans and specifications.
Conditions of Appraisal:  This report has been completed "as is" and was made for use by the lender/client or their assigns for mortgage purposes only.
Final Reconciliation: See Attached Addendum.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised  6/93 ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF  03/02/2005
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $  1,200,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature | Signature   [ ] Did   [ ] Did Not |
| Name Stephen Flaxman | Name   Inspect Property |
| Date Report Signed  03/07/2005 | Date Report Signed  03/07/2005 |
| State Certification #  RCR 651    State CT | State Certification #    State |
| Or State License #    State CT | Or State License #    State |

COMPLETE APPRAISAL / SUMMARY REPORT

**UNIFORM RESIDENTIAL APPRAISAL REPORT**   File No. s-5700

Supplemental Valuation Section

| ITEM | SUBJECT | COMPARABLE NO. 4 | | COMPARABLE NO. 5 | | COMPARABLE NO. 6 | |
|---|---|---|---|---|---|---|---|
| 367 West Hill Road | | 78 Nathan Hale Drive | | | | | |
| Address Stamford | | Stamford | | | | | |
| Proximity to Subject | | 0.81 miles | | | | | |
| Sales Price | $ Refinance | $ | 1,250,000 | $ | | $ | |
| Price/Gross Liv. Area | $ 0.00 ☑ | $ 418.90 ☑ | | $ ☑ | | $ ☑ | |
| Data and/or | Inspection | | | | | | |
| Verification Sources | Public Record | MLS,Public Record | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Sales or Financing | None Known | None Known | | | | | |
| Concessions | | | | | | | |
| Date of Sale/Time | N/A | Pending 2.5% | -31,500 | | | | |
| Location | Average | Similar | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 1.20 Acres | 1.01 Acres | 8,500 | | | | |
| View | Average | Similar | | | | | |
| Design and Appeal | Cape/Average | Col/Si Sup 2.5% | -31,000 | | | | |
| Quality of Construction | Average | Similar | | | | | |
| Age | 57A/5-10E | 40A/5-10E | | | | | |
| Condition | Good | Similar | | | | | |
| Above Grade | Total 10 Bdrms 5 Baths 4F | Total 10 Bdrms 5 Baths 3F1H | 10,000 | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | | | | | | | |
| Gross Living Area | 3,261 Sq.Ft. | 2,984 Sq.Ft. | 12,500 | Sq.Ft. | | Sq.Ft. | |
| Basement & Finished | Full | Full | | | | | |
| Rooms Below Grade | Part Finished | Finished | -10,000 | | | | |
| Functional Utility | Good | Good | | | | | |
| Heating/Cooling | Central / CAC | Central / CAC | | | | | |
| Energy Efficient Items | Per Code | Per Code | | | | | |
| Garage/Carport | 2 Garage | 2 Garage | | | | | |
| Porch, Patio, Deck, | Patio | Similar | | | | | |
| Fireplace(s), etc. | 1 Fireplace | 2 Fireplaces | -5,000 | | | | |
| Fence, Pool, etc. | Ing. Pool | None | 25,000 | | | | |
| Other | None | None | | | | | |
| Net Adj. (total) | | ☐ + ☒ - $ | 21,500 | ☒ + ☐ - $ | 0 | ☒ + ☐ - $ | 0 |
| Adjusted Sales Price | | | | | | | |
| of Comparable | | $ | 1,228,500 | $ | 0 | $ | 0 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc. ):   See comments for sales 1, 2, & 3.

| ITEM | SUBJECT | COMPARABLE NO. 4 | COMPARABLE NO. 5 | COMPARABLE NO. 6 |
|---|---|---|---|---|
| Date, Price and Data | None | None | | |
| Source for prior sales | Last 36 Months | Last 36 Months | | |
| within year of appraisal | Public Record | Public Record | | |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:
Additional comparables have been provided to help further support the final estimate of value for the subject property.

**ADDENDUM**

| | |
|---|---|
| Borrower: Farzad Moazed | File No.: s-5700 |
| Property Address: 367 West Hill Road | Case No.: |
| City: Stamford | State: CT | Zip: 06902 |
| Lender: Franklin First Financial | |

**Site Comments**
Normal public utility easements and setbacks. No apparent adverse conditions are noted.

Properties in the subject market typically have private water and/or sewage systems and are not deemed adverse to marketability.

**Additional Features**
The first floor of the subject dwelling offers a foyer, living room with crown molding and a fireplace, dining room, kitchen, den, family room, three bedrooms and two full baths.

The second floor of the dwelling offers two bedrooms and two full baths.

In addition the property offers a inground pool, two car garage, patio and a full partial finished basement with a rec room, and a laundry room.

**Adverse Environmental Conditions**
The appraiser assumes no liability for environmental concerns. No inspections have been made by the appraiser for asbestos containing materials (ACM'S), the condition of subterranean oil tanks, lead based paint, contaminated drinking water, radon gas, carbon monoxide, and/or any other environmental hazards including but not limited to chemical/pesticide runoff, illegal dumping, and landfills. The appraiser assumes no liability for environmental hazards associated with biological infestation, specifically but not limited to rodents and insects. The appraiser assumes there are no hidden or unapparent conditions of the property, subsoil, or structures which would render it more or less valuable. The appraiser assumes no responsibilities for such conditions, or for engineering which may be required to discover such factors.

**Comments on Sales Comparison**
Comparables within one mile of the subject property have been utilized. Except when comparables which exceed the milage guideline are deemed most indicative of the subjects' market value.

Comparable 4 is a pending sale and was adjusted downward 2.5% to represent a negotiated sale price, due to the listing agent was unwilling to release the contract price.

Comparables which have closed within the last six months have been utilized. Except when comparables which have closed beyond the guideline or are active/pending were deemed most indicative of the subjects' market value.

When deemed necessary a $50,000/acre site adjustment has been utilized to reflect differences in land area.

Where the difference in GLA of the subject property and that of the comparable is greater than 50 sf, an adjustment of $45/sf has been utilized. All adjustments have been rounded to the nearest $500.

MLS photographs were used when they provided a clearer picture of the comparable property than those taken from the street.

The comparables utilized were the best available as of the effective date of this report. The comparables, as adjusted, illustrate a reasonable range of value for deriving an estimated fair market value of the subject property. The comparable data is considered to be true and reliable and all adjustments are market supported.

**Final Reconciliation**
Final reconciliation is primarily based on the Sales Comparison Approach as it is derived from the most reliable market data. The Cost Approach has been calculated although is derived from less reliable market data as compared to the Sales Comparison Approach and therefore given less emphasis. The Income Approach has been considered although was not developed due to the lack of reliable market data needed to calculate a true GRM. The marketing/exposure time for the subject property is deemed to be 3-6 months.

**Purpose of the Appraisal Report**

This summary appraisal report is intended for use by the lender and/or their successors and assigns for mortgage lending purpose only. This report is not intended for any other use.

Information, estimates and opinions furnished to the appraiser and contained in the report, were obtained from sources considered to be reliable, and believe to be true and correct.

**Electronic Signatures**

The signatures contained in this report are secured original signatures. Only this office has the ability to add or remove these secured signatures.

**SUBJECT PROPERTY PHOTO ADDENDUM**

| | | |
|---|---|---|
| Borrower: Farzed Moazed | File No.: s-5700 | |
| Property Address:367 West Hill Road | Case No.: | |
| City: Stamford | State: CT | Zip: 06902 |
| Lender: Franklin First Financial | | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: March 2, 2005
Appraised Value: $ 1,200,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**



Subject Photos Interior

| Borrower: Farzad Moazed | | File No.: s-5700 |
|---|---|---|
| Property Address: 367 West Hill Road | | Case No.: |
| City: Stamford | State: CT | Zip: 06902 |
| Lender: Franklin First Financial | | |



Living Room



Kitchen



Bath



Subject Photos - Additional Features / Amenities

| Borrower: Farzad Moazed | | File No.: s-5700 |
|---|---|---|
| Property Address: 367 West Hill Road | | Case No.: |
| City: Stamford | State: CT | Zip: 06902 |
| Lender: Franklin First Financial | | |



Bedroom



Pool





COMPARABLE PROPERTY PHOTO ADDENDUM

| Borrower: Farzad Moazed | | File No.: s-5700 | |
|---|---|---|---|
| Property Address: 367 West Hill Road | | Case No.: | |
| City: Stamford | State: CT | | Zip: 06902 |
| Lender: Franklin First Financial | | | |



**COMPARABLE SALE #1**

106 E Middle Patent Road
Stamford 06903
Sale Date: 08/04 Clsd
Sale Price: $ 1,250,000



**COMPARABLE SALE #2**

149 Emery Drive East
Stamford
Sale Date: 11/04 Clsd
Sale Price: $ 1,295,000



**COMPARABLE SALE #3**

75 Halliwell Drive
Stamford
Sale Date: 06/04 Clsd
Sale Price: $ 900,000



COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: Farzad Moazed | File No.: s-5700 |
| Property Address: 367 West Hill Road | Case No.: |
| City: Stamford | State: CT    Zip: 06902 |
| Lender: Franklin First Financial | |



**COMPARABLE SALE #4**

78 Nathan Hale Drive
Stamford
Sale Date: Pending 2.5%
Sale Price: $ 1,250,000



**COMPARABLE SALE #5**

Sale Date:
Sale Price: $



**COMPARABLE SALE #6**

Sale Date:
Sale Price: $



**FLOORPLAN**

| | | |
|---|---|---|
| Borrower: Farzad Moazed | File No.: s-5700 | |
| Property Address:367 West Hill Road | Case No.: | |
| City: Stamford | State: CT | Zip: 06902 |
| Lender: Franklin First Financial | | |



**LOCATION MAP**

| | |
|---|---|
| Borrower: Farzad Moazed | File No.: s-5700 |
| Property Address: 367 West Hill Road | Case No.: |
| City: Stamford | State: CT    Zip: 06902 |
| Lender: Franklin First Financial | |



File No. s-5700

**DEFINITION OF MARKET VALUE:**    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.  Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the Appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**    The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it.  The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title.  The property is appraised on the basis of it being under responsible ownership.

2.  The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area.  Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5.  The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value.  These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.  The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc. ) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal.  Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc. ) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property.  The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.  The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.  The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10.  The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated ) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent.  The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

---

File No. s-5700

**APPRAISERS CERTIFICATION:**    The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to , or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**    If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**  367 West Hill Road, Stamford, CT  06902

**APPRAISER:**

Signature:  _Stephen Flaxman_
Name: Stephen Flaxman
Date Signed: 03/07/2005
State Certification #: RCR 651
or State License #:
State: CT
Expiration Date of Certification or License: 04/30/2005

**SUPERVISORY APPRAISER (only if required)**

Signature:
Name:
Date Signed: 03/07/2005
State Certification #:
or State License #:
State:
Expiration Date of Certification or License:

☐ Did   ☐ Did Not Inspect Property



**Hunt Leibert**

Hunt Leibert Jacobson, P.C.
Attorneys at Law
Hartford & Fairfield, Connecticut

50 Weston Street
Hartford, CT 06120
Telephone: (860) 808-0606

June 14, 2005

VIA FACSIMILE: (631) 370-1207
Attn: Lisa Rotolo

Re:   Everhome Mortgage Company
      Vs. Farzad Moazed, et al
      Loan No. 0000038562
      Property: 387 West Hill Road, Stamford, CT

Dear Ms. Rotolo:

Pursuant to your request, the following is the amount needed to pay off the mortgage loan from the above matter through and including July 22, 2005:

| | |
|---|---|
| Principal balance | $533,817.87 |
| Interest to 7/22/05 ($131.63 Per Diem) | 208,949.28 |
| Escrow/Impound Advance | 41,058.58 |
| Unpaid Late Charges | 10,762.00 |
| Property Inspections | 396.00 |
| Recording Fee | 13.00 |
| BPO Fee | 115.00 |
| NSF Fees | 60.00 |
| Less: Uncollected Late Fees | (9,801.04) |
| PIR Fees | 24.76 |
| Attorney's Fees & Costs in Bankruptcy | 1,000.00 |
| Contested Fees | 34,251.38 |
| Title search fee, including certified copies | 180.00 |
| Court Entry Fee | 190.00 |
| Marshal Fee | 273.55 |
| Appraisal Fees (2) | 870.00 |
| Committee Fees | 2,906.38 |
| Recording Fee-Release of Lis Pendens (A) | 13.00 |
| Overnight Delivery Fee (A) | 15.60 |
| Total Due as of July 22, 2005 | $822,795.26 |

**PLEASE NOTE:** Estimates are those fees or costs (Marked as E) for items which have been ordered, but the exact amount of which have not yet been determined. Anticipated costs are those costs (marked as A) for items which will be ordered prior to the payoff date contained in this letter. Actual recording fee is subject to passing of pending legislation and any overpayment will be refunded Any fee or cost line item for which a figure of $0.00 is indicated do not apply to your particular loan. If, for any reason, those anticipated costs have not been incurred prior to receipt of the payoff funds, these anticipated costs will be refunded to you by our office, if received by us, or by our client if received by our client. To the extent funds are received in payment of such anticipated or estimated items, any excess funds, after payment of the actual charges will be refunded to you as above. **Please read page two (2) Carefully.**

To:  Lisa Rotolo

# GOOD FAITH ESTIMATE

| | |
|---|---|
| **Applicants:** FARZAD MOAZED | **Application No:** Moazed |
| **Property Addr:** 367 WEST HILL RD, Stamford, CT 06902 | **Date Prepared:** 02/23/2005 |
| **Prepared By:** Franklin First Financial  Ph. 631-864-2771 | **Loan Program:** |
| 329 Hempstead Turnpike, West Hempstead, NY 11552 | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $  833,000   Interest Rate:  12.990 %   Term: 360 / 360 mths

| | | | | |
|---|---|---|---|---|
| **800** | **ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | | |
| 801 | Loan Origination Fee | 3.000% | | $  24,990.00 |
| 802 | Loan Discount | | | |
| 803 | Appraisal Fee | | (PAID) | 550.00 |
| 804 | Credit Report | | | 9.00 |
| 805 | Lender's Inspection Fee | | | |
| 808 | Mortgage Broker Fee | | | |
| 809 | Tax Related Service Fee | | | |
| 810 | Processing Fee | | | 605.00 |
| 811 | Underwriting Fee | | | |
| 812 | Wire Transfer Fee | | | |
| | Application Fee | | | 495.00 |

| | | | |
|---|---|---|---|
| **1100** | **TITLE CHARGES:** | | |
| 1101 | Closing or Escrow Fee: | | $ |
| 1105 | Document Preparation Fee | | |
| 1106 | Notary Fees | | |
| 1107 | Attorney Fees | | |
| 1108 | Title Insurance | | |

| | | | |
|---|---|---|---|
| **1200** | **GOVERNMENT RECORDING & TRANSFER CHARGES:** | | |
| 1201 | Recording Fees: | | $ |
| 1202 | City/County Tax/Stamps: | | |
| 1203 | State Tax/Stamps: | | |

| | | |
|---|---|---|
| **1300** | **ADDITIONAL SETTLEMENT CHARGES:** | |
| 1302 | Pest Inspection | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | *Estimated Closing Costs* | 26,649.00 |
| **900** | **ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | | | |
| 901 | Interest for | 15 | days @ $  300.8742 | per day | $  4,808.61 |
| 902 | Mortgage Insurance Premium | | | | |
| 903 | Hazard Insurance Premium | | | | |
| 904 | | | | | |
| 905 | VA Funding Fee | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **1000** | **RESERVES DEPOSITED WITH LENDER:** | | | | |
| 1001 | Hazard Insurance Premiums | 0 months @ $ | 250.00 | per month | $ |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | | per month | |
| 1003 | School Tax | months @ $ | | per month | |
| 1004 | Taxes and Assessment Reserves | 0 months @ $ | 916.66 | per month | |
| 1005 | Flood Insurance Reserves | months @ $ | | per month | |
| | | months @ $ | | per month | |
| | | months @ $ | | per month | |

| | | | |
|---|---|---|---|
| **TOTAL ESTIMATED SETTLEMENT CHARGES** | | *Estimated Prepaid Items/Reserves* | 4,808.61 |
| | | | 31,457.61 |

| **TOTAL ESTIMATED FUNDS NEEDED TO CLOSE:** | | **TOTAL ESTIMATED MONTHLY PAYMENT:** | |
|---|---|---|---|
| Purchase Price/Payoff (+) | 775,000.00 | New First Mortgage (-) | |
| Loan Amount (-) | 833,000.00 | Sub Financing(-) | |
| Est. Closing Costs (+) | 26,649.00 | New 2nd Mtg Closing Costs(+) | |
| Est. Prepaid Items/Reserves (+) | 4,808.61 | Principal & Interest | 9,209.13 |
| Amount Paid by Seller (-) | | Other Financing (P & I)* | |
| | | Hazard Insurance | 250.00 |
| | | Real Estate Taxes | 916.66 |
| | | Mortgage Insurance | |
| | | Homeowner Assn. Dues | |
| | | Other | |
| **Total Est. Funds to you** | 22,842.39 | **Total Monthly Payment** | 10,375.79 |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.   The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

Applicant  FARZAD MOAZED _____ Date _____    Applicant _____ Date _____

Calyx Form gfe2.frm 11/01



Hunt Leibert Jacobson, P.C.
Attorneys at Law
Hartford & Fairfield, Connecticut

50 Weston Street
Hartford, CT 06120
Telephone: (860) 808-0606

June 14, 2005

VIA FACSIMILE: (631) 370-1207
Attn: Lisa Rotolo

Re:    Everhome Mortgage Company
       Vs. Farzad Moazed, et al
       Loan No. 0000038562
       Property: 367 West Hill Road, Stamford, CT

Dear Ms. Rotolo:
       Pursuant to your request, the following is the amount needed to pay off the mortgage
loan from the above matter through and including July 22, 2005:

| | |
|---|---|
| Principal balance | $533,817.87 |
| Interest to 7/22/05 ($131.63 Per Diem) | 206,949.28 |
| Escrow/Impound Advance | 41,058.58 |
| Unpaid Late Charges | 10,762.00 |
| Property Inspections | 396.00 |
| Recording Fee | 13.00 |
| BPO Fee | 115.00 |
| NSF Fees | 60.00 |
| Less: Uncollected Late Fees | (9,801.04) |
| PIR Fees | 24.75 |
| Attorney's Fees & Costs In Bankruptcy | 1,000.00 |
| Contested Fees | 34,251.38 |
| Title search fee, including certified copies | 180.00 |
| Court Entry Fee | 190.00 |
| Marshal Fee | 273.55 |
| Appraisal Fees (2) | 670.00 |
| Committee Fees | 2,906.38 |
| Recording Fee-Release of Lis Pendens (A) | 13.00 |
| Overnight Delivery Fee (A) | 15.50 |
| **Total Due as of July 22, 2005** | $822,795.26 |

**PLEASE NOTE:** Estimates are those fees or costs (Marked as E) for items which
have been ordered, but the exact amount of which have not yet been determined. Anticipated
costs are those costs (marked as A) for items which will be ordered prior to the payoff date
contained in this letter. Actual recording fee is subject to passing of pending legislation and
any overpayment will be refunded Any fee or cost line item for which a figure of $0.00 is
indicated do not apply to your particular loan. If, for any reason, those anticipated costs have
not been incurred prior to receipt of the payoff funds, these anticipated costs will be refunded
to you by our office, if received by us, or by our client if received by our client. To the extent
funds are received in payment of such anticipated or estimated items, any excess funds, after
payment of the actual charges will be refunded to you as above. **Please read page two (2)
Carefully.**

To:    Lisa Rotolo